## JACOB C. BARR *v.* W. B. SCHROEDER.

DEED OF TRUST.—It is not necessary that a deed of trust by which the grantor conveys to the grantee, in trust to sell the property and pay a debt of the grantor to a third person out of the proceeds, should be delivered to, or assented to, or exouted by the *cestui que trust*, or that there should be a debt due from the grantor to the *cestui que trust*, in order, as between the grantor and grantee, to
· pass the legal title to the grantee.
IDEM.—The above rule does not impair the right of a creditor of the grantor to question the *bona fides* of the deed.
DEED TO FICTITIOUS PERSON.—A deed to J. C. B., when there is no such person in existence, does not transfer the title of the property to any one.
DELIVERY OF DEED.—The recording of a deed is not evidence of its delivery by
· the grantor to the grantee, unless the deed comes from the hands of the grantor, or some one claiming through or under him.
IDEM.—Without the delivery of a deed it is void.
CONFIRMATION.—A confirmation is a contract by which an act that was voidable is made firm and unavoidable.
CONFIRMATION OF VOID DEED.—A deed that was void for want of a delivery, or through mistake in reciting the name of the grantee, cannot be confirmed by a subsequent deed given for that purpose.
INTEREST WHICH MAKES POWER OF ATTORNEY IRREVOCABLE.—The interest which an attorney in fact must have in order to render his power of attorney irrevocable, must be an interest in the property on which the power is to be exercised, and not an interest in the money derived from a sale of the property.
IRREVOCABLE POWER OF ATTORNEY.—A power of attorney may be irrevocable though it is not a power coupled with an interest, as where it is given as security for the payment of money, or is made irrevocable.
POWER OF ATTORNEY NOT IRREVOCABLE.—A power of attorney which makes the attorney an universal agent for the transaction of all ordinary business will not be held irrevocable, unless its terms are so plain as to need no construction.
SURPLUS IN DEED DOES NOT VITIATE IT.—If a second deed recites that it is given to confirm a former one in which mistakes had occurred, and the first deed was void, rendering confirmation impossible, the recitals in the second deed may be regarded as surplus, and it will be sufficient in law to pass the title.

APPEAL from the District Court, Second Judicial District, Tehama County.

Ejectment to recover lots nine, ten, eleven, and twelve, in block thirty-one, in the town of Red Bluff, Tehama County. The complaint was in the usual form, and the answer consisted of a general denial, and a clause setting up title in defendant acquired by a purchase of the demanded premises at Sheriff's sale, made under an execution issued on a judgment in favor of F. E. Corcoran and wife, and against J. G. Doll and J. L.

77

Simpson, rendered after the date of the deeds hereinafter mentioned. It was admitted on the trial that said Doll owned the property on the 13th day of April, 1864. The plaintiff, to sustain the issue on his part, offered in evidence a deed of trust made by said Doll to said Simpson, on the 13th day of April. The following is a copy of such portion of the deed as bear upon the points in dispute:

"This deed made and entered into this thirteenth day of April, A. D. 1864, between J. Granville Doll, party of the first, J. L. Simpson, party of the second part, and Cunningham Hawkins, party of the third part, witnesseth as follows, to wit:

"Whereas the party of the first has borrowed of the party of the third part, the sum of fifteen thousand dollars ($15,000), and has executed and delivered his promissory note therefor, in the words and figures following, to wit:

"'$15,000. SACRAMENTO, April 13, 1864.

"'On or before the first day of May, 1866, for value received, I promise to pay to Cunningham Hawkins or bearer, in Red Bluff, of Tehama County, fifteen thousand dollars in gold coin of the United States, of the standard value of 1860, with interest from date until paid, at the rate of two per cent per month, payable in like gold coin monthly, and should default be made in the payment of said interest, then the same shall be added to the principal and bear the same rate of interest, or the whole amount of principal and interest shall become immediately due and payable at the option of the holder hereof.

"'J. GRANVILLE DOLL.'"

"And whereas, it is agreed between said parties of the first and third, that the payment of such promissory note and the interest that may grow due thereon shall be secured by the said party of the first part conveying to the said party of the second part the property hereinafter described, which the said

party of the second part shall hold, subject to the trusts and conditions hereinafter expressed.

" Article 1st. Now, therefore, the said party of the first part, in consideration of the premises and the sum of one dollar to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, hath granted, bargained, sold and conveyed, and by these presents doth grant, bargain, sell and convey in trust, as hereinafter expressed, unto the said party of the second part the following described property. [Here follows a description of the property.]

" 2d. And the trusts which the said party of the second part declares are as follows: First, That he will, upon the payment of the said promissory note and the interest, re-convey to the said party of the first part all and singular, or so much thereof as may remain unsold of the hereinbefore described property, and will account for the rents, issues and profits thereof in the meantime, as well as for the proceeds of sales of property which may be sold by virtue of the power hereinafter conferred. Second, That he will skilfully and prudently control, manage and take care of all the property by this instrument vested in him, and will, upon the failure of the said party of the first part to pay the interest on said promissory note, as the same becomes due, apply the net proceeds arising from the rent, use and occupation of said property towards the payment of the same. Third, That he will, upon the demand of the said party of the third part, or the holder of said promissory note, upon the said party of the first part failing for the space of three months to pay the interest thereon, proceed to sell at private or public sale, whichever in his discretion may seem best, so much of said property as he may deem prudent, and for such sums as of money as to him shall seem meet, and apply the proceeds of such sales towards the liquidation of said debts evidenced by said promissory note. Fourth, That his compensation for such services shall be limited to such disbursements as the prudent and skilful management and protection of the prop-

erty shall require to be made, and a commission of five per cent upon the sales of said property made by him, and ten per cent upon all sums collected by him for rents of the said property. &ast; &ast; &ast; &ast; &ast;

      " J. GRANVILLE DOLL."   [L. S.]
      " J. L. SIMPSON."    [L. S.]

The defendant's attorney objected to the deed being received in evidence, because not signed by Hawkins. The Court reserved its decision upon the point until the further progress of the trial. The plaintiff then introduced in evidence a deed of the property from the trustee Simpson to Edward C. Jones, dated December 17th, 1864. Defendant's attorney objected, because no authority was shown from Hawkins, the *cestui que trust.* The Court still reserved its decision.

The plaintiff, after proving that the Bank of Red Bluff was a corporation, then introduced a power of attorney from said E. C. Jones to said corporation, dated the 20th day of December, 1864, empowering the corporation to sell said property and apply the proceeds to Jones' indebtedness to the Bank. This power of attorney contained a power of substitution. In connection with this power, the plaintiff also introduced a substitution of the power from said corporation to J. L. Simpson, dated July 5th, 1865.

The plaintiff then introduced in evidence a certified copy from the Recorder's office of a deed of the property from said Edward C. Jones to John C. Barr, of Clark County, Ohio, dated May 10th, 1865. The loss of the original had been first proved. In this connection plaintiff proved that Barr's given name was Jacob C. Barr, and that by mistake he was called John C. Barr in the deed.

The plaintiff then introduced in evidence a deed of the property given by said Jones by his attorney in fact, J. L. Simpson, dated the 17th day of March, 1866. This deed from Jones by his attorney to Barr, is the one which recites the former deed of Jones to Barr and the mistake in it, and that it

was made to correct and confirm the former deed, as stated in the opinion of the Court.

The defendant, as the testimony was offered, interposed objections, but the Court still reserved its decision. The plaintiff then rested. The defendant by his attorney, moved for a nonsuit, because the plaintiff had shown no title to the property. The Court granted the motion, and plaintiff excepted. The plaintiff appealed.

The other facts are stated in the opinion of the Court.

*J. G. Doll*, for Appellant.

The granting defendant's motion for a nonsuit appellant insists was error. The deraignment of the title from Doll by plaintiff to the premises is perfect, and is not subject to any of the objections urged by defendant's counsel. The deed from Doll to Simpson in trust with power of sale did not, in point of law, require the signature of either the party of the *second* or *third* part, any more than an ordinary mortgage or deed of conveyance requires the signature of the grantee or the party secured. *Koch* v. *Briggs*, 14 Cal. 256, was a case where property was conveyed in trust to secure, and, by the sale, to pay a debt. In that case, like this, there were three parties to the deed, to wit: a grantor, trustee, and a *cestui que trust*, yet only one of the parties (the grantor) signed it. We contend that the delivery of the deed would be implied, and likewise the assent of the *cestui que trust*. (2 Kent, 533, and notes; 4 Kent, 455, 456, and notes; 1 Mead, Tenn. 206; 11 Wheaton, U. S. R. 78.) The power of attorney from Jones to the Bank of Red Bluff is irrevocable, because coupled with an interest. It contains full power of substitution. This last power is exercised in the appointment of Simpson. The power, sole, full, and complete, to convey the property is thus found lodged in Simpson. The form or manner in which this power is exercised is important only as between the Bank and Jones. The consideration, if any, moving between the parties who got it and how disposed of, is likewise unimportant and irrelevant to any issue now involved. It would

be difficult to frame a letter of attorney granting more com-prehensive and complete powers than the one under consid-eration, and the deed of Jones, by Simpson, attorney, of March 17th, 1865, would convey the title to plaintiff, whether for the purposes of this action it be considered as a grant or a confirmation.

*W. S. Long,* for Respondent.

In this case the nonsuit was properly granted. The trust deed relied on by the plaintiff was never executed. A con-tract must be binding upon all the parties to it or is not bind-ing at all. A deed between several parties is not valid as a deed until it has been signed by all the parties. (*Doe ex Demise of Lewis* v. *Bingham,* 4 Barnwell & Alderson, 675 ; 6 Eng. Com. Law, 650 ; *Sacramento* v. *Dunlap,* 14 Cal. 421 ; *People* v. *Hartley,* 21 Cal. 588.) If this deed fall, then there is no authority to execute the lease. (*Folsom* v. *Perrin,* 2 Cal. 604.)

By the Court, RHODES, J. :

The motion for a nonsuit was sustained on two grounds. The first ground is that the deed of trust did not pass the title from Doll. Doll conveyed the property in action, together with other lands, to Simpson in trust; to sell so much thereof as he might deem proper, to pay the promissory note of Doll to Hawkins, upon Doll's failure to pay the same, and on the demand of the holder of the note, etc.; also, to sell parcels of the land " whenever in his opinion a reasonable price was offered for the same ;" and to reconvey to Doll the portion remaining unsold, upon the payment of the note to Hawkins. The objections to the deed stated by the Court in granting the nonsuit were, that it was not signed by or assented to by Hawkins nor delivered to him. It was not necessary that it should have been signed by Hawkins. There are no cove-nants or conditions on his part in the deed requiring that it should be executed by him ; and no rule of law is cited which

makes it requisite that the *cestui que trust* should execute the instrument creating the trust.  It appears from the testimony of Doll, that the deed was delivered to Hawkins, and, if delivered to him, his assent to it is presumed.  But the point need not be rested on that ground.  The deed would be good as between Doll and Simpson, without any delivery to or assent by Hawkins, and indeed its sufficiency to pass the title to Simpson does not depend upon the fact of there being such a note as is therein described, or even a debt due from Doll to Hawkins.  If Doll chooses to convey, and Simpson is willing to take the title, under such circumstances, they may declare such trusts as they please, and both are bound by the recitals and are estopped from denying that the legal title passed. This does not impair the right of a creditor of the grantor to question the *bona fides* of the transaction.  The conveyance is valid as between the parties, though it should be held fraudulent and void as against the creditors of the grantor, on the ground that it was executed with the intent to hinder, delay, or defraud them.  Questions such as migh grow out of a contest between a person claiming title through Simpson, and a creditor of Doll, could not properly arise upon the motion for a nonsuit.  The deed was *prima facie* sufficient to pass the title, and if the defendant would attack it, on the ground that it was not executed to secure the debt therein mentioned, he must first bring himself into the proper relations with the grantor.

The second ground is, that the title did not pass from Jones to the plaintiff, Jacob C. Barr.  Jones executed a deed of the premises to *John C. Barr*, and subsequently Simpson, as the attorney in fact of Jones, executed a deed to *Jacob Barr*, and in it reference is made to the deed of Jones, and it is recited that by mistake Jacob C. Barr was therein called and named *John C. Barr*, and that the parties desire to correct the mistake and confirm the grant in said deed according to the then intention of the parties; and the premises are conveyed by the deed to Jacob C. Barr "as well in performance of the covenants in said indenture contained, as also for and in considera-

tion of the premises hereinbefore recited, and the further consideration of one dollar to him, the said Edward C. Jones, in hand paid by the said Jacob C. Barr, the receipt whereof is hereby acknowledged." The deed of Jones did not transfer the legal title to the plaintiff, nor did it transfer it to any one. There is no evidence of the delivery of the deed to John C. Barr, nor, in fact, is there any evidence that there was such a person in existence as John C. Barr. Had it been shown directly that there was such a person as John C. Barr, or had the same been made to appear by presumption, by the production of the deed by one claiming through him, there would perhaps, be no difficulty in holding that the recording of the deed was evidence of its delivery; but the recording is not evidence of the delivery of the deed, unless it comes from the hands of the grantee therein named, or some one claiming under or through him. The question therefore turns upon the deed executed by Simpson as the attorney in fact of Jones.

Jones executed to the Bank of Red Bluff a power of attorney, very ample in its terms, giving the Bank authority, among other things, to lease, bargain, sell, re-lease and convey lands ; to execute and deliver deeds ; to substitute an attorney in its stead, and to credit all moneys, credits and effects received by the attorney, or the substitute, upon the note of Jones to the Bank, described in the letter of attorney. The Bank substituted Simpson as the attorney in fact of Jones. The deed executed under this power did not operate by way of confirmation of the deed of Jones, nor is it possible for it to have such an operation. A confirmation is a contract by which an act that was voidable is made firm and unavoidable. It necessarily implies a prior voidable act. A deed is an instrument in writing, sealed and delivered. Without a delivery the writing is not voidable, but it is void—a mere nullity. The execution and delivery of the second instrument—the one executed by Simpson as the attorney in fact of Jones—did not constitute a delivery of the first. It was a misapplication of terms to say that the parties desired to confirm the grant, for one of the parties to the second deed was not a party to the

first; the first deed was not a grant; if it was susceptible of confirmation it would have vested the title in John C. Barr; and it is, to say the least, unusual for an agent to ratify the acts of his principal. If the second deed was of any force, it derived its value from its own execution and delivery.

The same is true of the second deed in respect to the attempt to correct the first. The first deed having omitted the name of the intended grantee, the transmission of the title to the plaintiff must of necessity depend upon the second deed, in which he is described. The matter would be no clearer had the mistake been the omission of the premises intended to be conveyed.

Was the second deed sufficient to pass the title of Jones to the plaintiff? It is claimed by the plaintiff that the letter of attorney of Jones to the bank, was given for the purpose of securing the payment of his promissory note, that as such it amounted to a " power coupled with an interest," and was therefore irrevocable. This position cannot be maintained. The interest which the party to whom the power is given must have, in order to render the power irrevocable, must be an interest in the property on which the power is to be exercised. It is not enough that the donee of the power is interested in that which is produced by the exercise of the power. If his interest is thus limited the power and the interest cannot be coupled, for the proceeds do not arise until after the power has been exercised, and when it is exercised it is extinguished. (*Hunt* v. *Rousmaniere*, 8 Wheat. 174; *Bergen* v. *Bennett*, 1 Caine's Cases, 1.) No interest in the land was conveyed to the Bank at the execution of the power of attorney, or was then held by it. But a power of attorney may be irrevocable, though it is not a " power coupled with an interest." This is often the case where the power of attorney is given as a security for the payment of money. Where the· constituent expressly agrees that the power of attorney shall be irrevocable, or the nature of the contract shows that such was the intention of the parties, he will be held to the con-

tract, and not be permitted to revoke it, either directly or indirectly, except upon the payment of the money intended to be secured.  The difficulties in the way of holding this power irrevocable are very great, if not insuperable.  As already remarked, it is most comprehensive in its grant of authority to the attorney, constituting him an universal agent. There is scarcely an act that may be performed in the transaction of ordinary business that he has not empowered his attorney to perform in his name.  There is no different authority given in respect to this land, than is given over all the property and business of the constituent, and if the power of sale in this case should be held irrevocable, it must also be held that the power granted in respect to his entire property and business was irrevocable, and he would thus be left chargeable with the debt to the Bank, but without any power to raise the money for its payment.  The terms of the grant must be so plain that there is no room for construction, or it will not be held that such plenary power was intended to be made irrevocable.

But it would not seem to be necessary to claim that the power granted was irrevocable in order to uphold the deed executed by Simpson as Jones' attorney in fact.  Strike out of the deed the matters in respect to the mistake, and the confirmation and the deed still remains sufficient in law to pass the title.  Those matters must be disregarded because they were impossible of accomplishment in that mode.  The deed is not vitiated by their presence.  Had Jones personally executed the second deed as well as the first, there would be no question that the second was sufficient to pass, and that it alone did pass the title to the plaintiff; and as the first deed did not pass the title, and therefore did not revoke or impair the authority of the attorney in fact, the second deed is to be regarded as if executed by the constituent.

Judgment reversed and the cause remanded for a new trial.

Opinion of Sawyer, J., dissenting.

SAWYER, J., dissenting:

In my judgment there is no legal evidence in the record tending to show that John C. Barr, the grantee nominated in the deed, was not the real as well as the nominal and apparent grantee. The affidavit of Doll was introduced for the purpose of laying the foundation for introducing a copy of the deed from the record. For that purpose it was evidence, but for no other. It was *ex parte* and no evidence to the point as to who was intended to be the real grantee in the deed to John C. Barr. And it does not appear to have been introduced for any such purpose. The recitals in the subsequent deed, executed under the power of attorney, purporting to correct the alleged mistakes, and to which John C. Barr was no party, are no legal evidence of the mistake recited. Doll does not directly testify to any such mistake. There is no evidence that there was not such a man as John C. Barr, and the fact that a deed to him was executed and recorded is, I think, presumptive evidence that the deed was delivered for his benefit. Conceding, then, that the mistake alleged may be shown in an action to recover the possession of land, there is not, in my judgment, any evidence in this case to show the fact, and the evidence presumptively shows title in John C. Barr, and not in the plaintiff.

The plaintiff is not entitled to recover on the ground that defendant has attorned to him as his landlord, for the demand shown is insufficient to terminate the tenancy under the terms of the lease. For this reason I think the evidence, as disclosed by the record, does not make a *prima facie* case for plaintiff, and that the nonsuit was properly granted.

Mr. Justice SANDERSON did not express any opinion.