[S. F. No. 10415. In Bank.—November 19, 1923.]

MAMIE SILVA STEWART, as Administratrix, etc., Respondent, v. MARIA FILOMENA ADELAIDE SILVA, Appellant.

[1] DEEDS — DELIVERY IN ESCROW — DEALING WITH PROPERTY BY GRANTOR—EVIDENCE.—Where a deed is deposited in escrow to be delivered to the grantee upon the death of the grantor, the legal effect is that the grantor retains a life estate, and the fact that the grantor after such deposit enters into a lease of the property in his own name is perfectly proper.

[2] ID. — POSSESSION OF DEED — PRESUMPTION OF DELIVERY. — A presumption of delivery of a deed arises from the fact that the grantee actually has the possession of the deed and produces it in court, and one disputing the delivery must overcome this presumption by satisfactory evidence.

[3] ID.—POSTPONEMENT OF RECORDING—MISAPPREHENSION.—The fact that the grantor in a deed deposited in escrow expressed a desire that it should not be recorded until after his death and intended to exercise acts of ownership over the property during his life would not prevent the delivery from being effective if the grantor in fact intended to deliver the deed, nor would his misapprehension of the effect of the deed, if he had such intention to deliver.

APPEAL from a judgment of the Superior Court of Marin County. Edward I. Butler, Judge. Reversed.

The facts are stated in the opinion of the court.

Jordan & Brann for Appellant.

H. L. Hagan and T. J. Ledwich for Respondent.

WILBUR, C. J.—The sole question at issue in this case is whether or not certain deeds executed by John J. Silvia as grantor to the defendant were delivered and thus vested the title, theretofore in said decedent, in the defendant. The question arises in an action to quiet title brought by the daughter of John J. Silvia, deceased, acting as the administratrix of his estate to quiet title to the land described in the conveyances. The trial court found that the conveyances were not delivered and therefore that the title was in the decedent at the time of his death and therefore entered a judgment quieting such title. The defendant appeals from this judgment.

The decedent made three deeds of the property in compliance with his promise to the defendant that if she came to San Rafael and worked for him during the rest of his life he would give her the property. Upon arriving in California in 1913 or 1914, decedent made a deed of this property to the defendant, which deed was placed in escrow with Thomas P. Boyd, his attorney. Later this deed was taken from the attorney by the grantor and delivered to the grantee and she was in actual possession thereof until 1919. In this deed the first name of the defendant was written as Mary instead of Maria. For that reason the deed was returned to the grantor and taken by him to his attorney, who

3. Effect of delivery of deed to grantee, subject to a future extrinsic condition, note, 16 L. R. A. (N. S.) 941.

prepared a new deed and the first deed was destroyed by the grantor. On August 20, 1919, the grantor and grantee both went to the office of the attorney. This attorney and the grantee both testify as to what occurred and from this testimony, if believed, it is clear that the deed was delivered at that time. The grantee testified as follows with reference to what occurred at that time: ''Q. Will you repeat his identical language at the handing over of the second paper? A. He gave me the paper. This is the deed of your property that I give you. From now on this property is yours, but during the time I live I will receive all the interest and I shall pay the taxes and then after I die send this paper to the recorder. . . . Q. What was done with that deed after it was handed to you on that occasion in 1919 in Mr. Boyd's private office? A. I took it and put it into a little handbag I had in my hand, took it home and kept it in my trunk. I saw it every time I would open my trunk, I would see it in the bottom of the trunk, underneath my clothes.''

The witness also testified that the deed remained in her possession until after the death of the grantor, whereupon she took it to the recorder's office and had it recorded.

The attorney, Thomas P. Boyd, was also called as a witness with reference to the delivery of the deed, and testified as follows: ''A. I got the deed from the desk of Miss Essie Boyd, my sister; it had been signed and acknowledged by Mr. Silvia and I brought it into the office. I then told Mr. Silvia that he should hand this deed to Miss Silva himself, and I told him the effect of handing that deed to her would be to deprive himself of title to the property. I asked him in fact if he knew what he was doing, if he understood it, and he said he did. So I then told him to hand the deed to her and tell her the property was hers. He took the deed from my hand, handed it to her in my presence, said something to her in Portuguese, which I did not understand, and she took that deed, put it into her handbag and left.'' This witness also testified that during the grantor's last illness he visited the grantor and that the grantor then asked about the deed. ''He asked me,'' the witness testified, ''if she would be safe in her property. I said, 'Yes; you can make the thing doubly sure by making a will if you want to.' He said he would not bother making a will as long as I was satisfied she had the property. It was hers.''

Mrs. Eva L. Osborn, who was employed by Mr. Boyd as stenographer and clerk, testified that the deed had been prepared at the instance of the grantor. With reference to the delivery she testified that Mr. Boyd took the deed into the room where the grantor and grantee were at the time in his office and then testified as follows: "Q. Then what took place, if you know? A. He left the door open when he went in so I saw everything that went on. He had the deed. Mr. Boyd had the deed and he said to Mr. Silvia, 'Now, John, I hope you know what, you realize what you are doing; when this deed passes to this lady the property becomes hers. It is no longer yours; you are making no mistake about this,' and he said, 'No, that is all right; I know, I trust her, and I want her to have it.' Q. And then what happened? A. Then Mr. Boyd said, 'Well, then you take the deed and hand it to her personally and tell her that.' Q. And then what happened? A. Then Mr. Boyd handed it to Mr. Silvia and he handed it to Miss Silva and said something to her but it was in Portuguese; I do not know what it was. Q. What did she do with the instrument, if anything? A. She had a little hand satchel and she put it in there."

The trial court found that on August 20, 1919, the decedent signed and acknowledged before a notary public a certain grant, bargain, and sale deed, sufficient in form to convey the real property described in the action to the defendant, but found that the deed was never delivered, but that the deed was secured by the grantee after the death of the grantor and recorded.

Six witnesses testified that the grantor told them that he had deeded the property to the grantee. Some of these statements were made previous to the acknowledgment and delivery of the second deed and for that reason undoubtedly referred to the first deed.

[1] The evidence relied upon by the respondent to overcome the direct testimony of these witnesses as to the delivery of the deed relates largely to the dealing of the parties after the making of the deed with the property therein described. The insurance policy upon the house was retained in the name of the grantor. Taxes were paid by the grantor. On January 1, 1916, the store was leased for five years by a written lease entered into by John J. Silvia and John

V. Cardoza and Manuel V. Cardoza. The property was therein described as owned by Silvia. It is argued: "If the 1914 deed was not regarded by the parties as a valid conveyance, it is a reasonable inference that they did not intend the 1919 conveyance to have any greater validity." The respondent's argument is in effect that the trial court was justified in disbelieving the testimony of the grantee because she had made contradictory statements; that the trial court was justified in disbelieving the attorney who testified for the reason that the attorney had executed the lease of the property in 1916, after the deed of 1914, showing that · although the two deeds were said to have been delivered under somewhat similar circumstances, the attorney did not believe that title had passed. In this connection, however, it should be observed that the first deed was deposited with the attorney in escrow to be delivered upon the death of the grantor, the legal effect of this arrangement being that the grantor would retain a life estate. Under these circumstances, of course, the making of the lease was perfectly proper. **[2]** Even if we assume that the trial court believed and intended to find as a fact that the attorney, his clerk and stenographer, and the defendant deliberately testified falsely as to the delivery of the deed, we still have the presumption of delivery arising from the fact that the grantee in the deed actually had the possession of the deed and produced it in court. This alone constituted *prima facie* evidence of delivery (*Ward* v. *Dougherty*, 75 Cal. 240, 242 [7 Am. St. Rep. 151, 17 Pac. 193]). It was there said: "Possession of a deed of property, however, by the grantee therein named, and upon the same principle by one holding by conveyance of the same property under him, is *prima facie* evidence of its delivery.

"The question of delivery being one of fact, and possession being only primary evidence of delivery, he who disputes such fact may rebut the presumption arising from possession by showing that there has in fact been no delivery; but it has been said that where a deed is found in possession of the grantee, nothing but the most satisfactory evidence of nondelivery should prevail against the presumption. (Devlin on Deeds, sec. 294.)

"In *Tunison* v. *Chamblin*, 88 Ill. 379, it was said: 'When a deed duly executed is found in the hands of a grantee,

there is a strong implication that it has been delivered, and only clear and convincing evidence can overcome the presumption. Otherwise titles could be easily defeated, and no one could be regarded as being secure in the ownership of the land.' . . .

"In *Branson* v. *Caruthers*, 49 Cal. 374, it was said: 'The production of the deed of gift by the attorneys of the wife [the grantee] was sufficient evidence of its delivery and acceptance.' (*Barr* v. *Schroeder*, 32 Cal. 609.)'"

[3] If we not only disregard the testimony of the witnesses who were present at and participated in the delivery of the deed to the grantee and also disregard the declarations made from time to time by the grantor that he intended to deed the property to the grantee and that he had deeded the property to the grantee, what have we left in the evidence to overcome the presumption of delivery arising from the possession of the deed by the grantee? There is nothing substantial. The evidence of the continued dealing with the property by the grantor was not necessarily in conflict with the actual situation disclosed by the evidence as offered by the defendant. The grantor was her godfather, who had brought her to this country to keep house for him. They lived together, and it was quite natural that the godfather, the grantor of the property, should continue to deal with it, pay taxes, insurance, and live upon the property with his goddaughter, the grantee, as he in fact did. This would not show that the deed was not delivered and the inferences arising therefrom of nondelivery would not be sufficient under the circumstances to overcome the *prima facie* case arising from the possession of the deed by the grantee. The fact that the grantor at the time of the delivery expressed a desire that the deed should not be recorded until after his death and intended to exercise acts of ownership thereover during his life, if we accept the testimony of the grantee that such statements were made by him at the time of the delivery of the deed, would not prevent the delivery from being effective if the grantor in fact intended to deliver the deed. A misapprehension by the grantor of the effect of the deed would not affect the fact of delivery, if made with the intention to deliver (see sec. 1056, Civ. Code; *Whitney* v. *Dewey,* 10 Idaho, 633 [69 L. R. A. 572, 80 Pac. 1117]).

The situation presented by this appeal may be summed up as follows: If the trial court disbelieved all the witnesses who testified on behalf of the defendant with reference to the delivery of the deed, there is no evidence to overcome the presumption of delivery derived from the · fact that the grantee had possession of the deed. If the trial court believed the testimony of these witnesses, it could not escape a finding of fact that the deed was delivered. In either event the finding of the trial court was erroneous.

Judgment reversed.

Waste, J., Seawell, J., Myers, J., Richards, J., *pro tem.,* and Lawlor, J., concurred.

LENNON, J., Concurring.—I concur in the conclusion of Mr. Justice Wilbur, which results in a reversal of the judgment in this case, primarily for the reason that it is the general rule that the uncontradicted and unimpeached testimony of a witness tending to establish an issuable fact in the case may not be arbitrarily disregarded by the trial court. (*Hayward* v. *Rogers,* 62 Cal. 348, 372; *Gage* v. *Billing,* 12 Cal. App. 688 [108 Pac. 664], 10 Cal. Jur., p. 1143.) To the contrary, such testimony must be accepted as proof of the fact which it is offered to establish unless it can be said that such testimony is so inherently incredible and improbable as to amount to no evidence at all. (*Hutchinson* v. *Holland,* 47 Cal. App. 710 [190 Pac. 1072]; *Hynes* v. *White,* 47 Cal. App. 549 [190 Pac. 836].) In the instant case the testimony of several witnesses concerning the issue of the execution and delivery of the deed in controversy is not inconsistent with the circumstances which admittedly preceded, attended, and followed the making and alleged delivery of said deed, and *prima facie* no good reason appears why the · testimony of said witnesses may not be said to reasonably harmonize with said circumstances. In the absence of circumstances tending to support a conclusion opposite to that deducible from the testimony of those witnesses, the trial court was not privileged to reject their testimony. (*Williams* v. *Covillaud,* 10 Cal. 419; *In re Sullivan's Estate,* 190 Cal. 229 [211 Pac. 458].)

Rehearing denied.

All the Justices concurred.