[Civ. No. 12109.   First Dist., Div. Two.   Aug. 13, 1942.]

MANUEL S. GEORGE, as Administrator, etc., Appellant, v. MARY SOARES, Respondent.

C. Ray Robinson, Willard B. Treadwell and John. H. Machado for Appellant.

Douglas A. Nye and D. Oliver Germino for Respondent.

NOURSE, P. J.—Plaintiff, as administrator of the estate of Manuel S. Pinheiro, deceased, appeals from a judgment in favor of defendant in an action seeking to set aside a deed and a trust agreement made by decedent in favor of defendant.

The property involved, situate in Los Banos, was owned by decedent and his wife prior to January 1, 1937, on which date the wife died and decedent became the sole owner. Shortly after his wife's death decedent moved to Oakland to live with his sister-in-law Guilhermina Pasqual. Immediately after his arrival decedent requested his nephew, Joe Pasqual, to make an appointment with an attorney as he wished to give his property to said sister-in-law. A meeting was arranged in an attorney's office and decedent made a gift of his property to said sister-in-law. Thereafter at decedent's request the property was reconveyed to him. Subsequently, and on July 21, 1937, decedent conveyed a one-half interest in the property to said sister-in-law. Soon thereafter decedent went to live with Mary Soares, the defendant herein, and another sister-in-law in Mill Valley. On September 10, 1937, an action was commenced on behalf of decedent to set aside the conveyance of July 21, 1937, to Mrs. Pasqual. This action was settled on or about February 10, 1938. On February 11, 1938, decedent deeded the property to the defendant. The last mentioned deed contained a provision that the property was to be held under the terms of an agreement of trust executed concurrently. Under the trust agreement the net income was to be paid to decedent during his life with

the remainder in fee to defendant subject to a power of appointment in decedent as to one-half of the remainder. The trust agreement recited that the transfer was in consideration of defendant's services as trustee and of care and keep theretofore given decedent. The deed was recorded March 12, 1938, but the trust agreement was not recorded until January 16, 1940, which was subsequent to the death of the decedent. On December 16, 1938, decedent was declared incompetent and defendant was appointed his guardian, she having theretofore, on December 3rd, filed a petition to have him so declared. Decedent died on December 1, 1939. The property involved was shown to have a value of about $10,250.

■ Appellant contends that the evidence establishes (and that findings to the contrary are not sustained by the evidence) that decedent was a man over 65 years of age, of impaired mentality, unable to speak, read or write English, without business experience, and unable to care for his own property; that a confidential relation existed between decedent and defendant; that in the questioned transaction decedent acted without independent advice; that the attorney who handled the matter was selected by and in fact represented defendant; and that there was no consideration for the transfer. It is appellant's contention that under the foregoing circumstances, even though the impaired mentality does not amount to absolute disqualification, a court of equity should set aside a conveyance.

Respondent does not dispute the rule of law, but contends that it is not applicable here because decedent, at the time of the transfer, was not incompetent to execute the documents, that there was a valuable consideration, and that decedent was independently advised by an attorney of his own choosing, and that in all other issues of fact there was such a conflict in the evidence that the trial court properly refused to apply the rule. Here it should be added that the rule of *Moore* v. *Moore,* 56 Cal. 89, 94, and of the other cases cited by the appellant, is not a rule that in all cases where some of these elements are present the trial court must set aside the conveyance. The rule is that when the trial court, in the exercise of its judicial discretion, has found that the circumstances warrant such equitable relief the decree will not be disturbed on appeal. ■ If the facts upon which appellant here relies were all proved by competent and substantial

evidence there would be some ground for appellant's attack upon the decree. But such is not the case. Every material fact upon which he relies was disputed by competent and substantial evidence. The appellant does not dispute this, but argues the point as though the appellate court was to determine which of the witnesses should be believed and which party had the preponderance of the evidence.

It is true that evidence offered by appellant tended to prove that the decedent was illiterate, enfeebled in mind and body, unable to read the English language, and unable to manage his property. The testimony of the medical witnesses was that for a short time prior to his death in December, 1939, the deceased was suffering from senility and was unable to think or talk clearly or fluently. Much of the testimony relating to his mental capacity was directed to instances far removed in time from the date of the execution of the documents. The evidence offered by respondent tended to show that the deceased had full knowledge of his property, and business affairs, understood the English language, and was able to carry on a simple conversation in that language. The respondent produced the witness Patricio, a former neighbor of the deceased in Los Banos, and one of the very few disinterested and unbiased witnesses appearing, who testified that he talked with the deceased in June, 1939, when the latter was visiting the witness in Los Banos. When asked what the deceased had told him at that time about this transaction the answer was: "Well, that time he told me that he was glad that he have the ranch out of Mrs. Pasqual and passed it to Mrs. Soares, and he said that his half-share is still in his name and he is going to give it to the ones that takes care of him the last days, and he say because Mrs. Pasqual been treating him rough and Mrs. Soares has been a mother to him." On cross-examination this witness further testified: "Q. Now Mr. Patricio, when you talked to Mr. Pinheiro after he had transferred the property to Mrs. Soares, he told you that he had transferred half to her, isn't that right? A. Yes, sir. Q. And that the other half he had in his name, isn't that right? A. Yes, sir. Q. And that he was going to use that half to give to those that took care of him, isn't that right? A. Yes, sir. Q. And that is what he told you? A. Yes, but at the same time he told us, told me and my wife that that property that is going to be left to Mrs. Soares because she has been like a mother to him, not because he liked Mrs.

Soares, because—Mrs. Pasqual, because mean to the children and in some kind of trouble that he had, but he said Mrs. Soares and the children treated him so nice that he feel like leaving his share, this balance to her, that is the last conversation. Even one time he told me if I want to take that share to take care of him, we take care of him, that he give half that ranch to us, and I said, 'No, we have got five children to take care of, we can't take care of anybody else.' Q. In other words, he said he would give you that half to take care of him, is that right? A. Yes, sir. Q. Yes? A. But at the same time we say we don't want it, well, he said, 'Mrs. Soares is going to take care of me.' Q. Then he said he was going to give her that half, is that right? A. Yes. Q. If she takes care of him? A. Yes, if she took care of him like she did.''

From this evidence the trial court could have inferred that the deceased had a clear understanding of the legal effect of the documents and that, a year or more after their execution, he expressed satisfaction with the disposition he had made. Upon all the evidence the trial court was justified in finding that none of appellant's attacks upon the documents was sustained by the evidence. And those findings put an end to the case.

The additional point raised by appellant—that the documents were not delivered—finds no support in the record. Both documents were delivered to the grantee by the grantor at the time of execution. The deed was then recorded. The trust agreement was kept in a safe deposit box owned jointly by grantor and grantee. The presumption of delivery arising from possession of the documents is prima facie evidence of delivery and supports the judgment. (*Ward* v. *Dougherty,* 75 Cal. 240 [17 Pac. 193, 7 Am. St. Rep. 151]; *Stewart* v. *Silva,* 192 Cal. 405, 409 [221 Pac. 191].)

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied September 12, 1942.