[Civ. No. 13975.   Second Dist., Div. Two.   May 21, 1943.]

D. L. SEVERN, as Administrator with the Will Annexed, etc., Respondent, v. BEA ANN RUHDE et al., Appellants.

J. E. Simpson for Appellant Ruhde.

James V. Brewer for Appellant Cassey.

W. I. Gilbert, Jr., for Respondent.

WOOD (W. J.), J.—Pheba Ann Cassey died on April 11, 1941, at the age of 87 years, leaving a will dated March 31, 1941, in which she gave all of her property to her four children in equal shares. She had given a deed to a parcel of real estate to her daughter, Bea Ann Ruhde. This deed bore the date of August 12, 1938, and was acknowledged on February 15, 1939. She gave a joint tenancy deed dated March 18, 1941, covering the same property to her son, George Vernon Cassey, in which he was named as joint tenant with herself. This deed was recorded on the day of its date. In this action the administrator with the will annexed of the estate of Pheba Ann Cassey seeks to quiet title to the real estate described in these two deeds and to require reconveyances by the grantees named in the deeds. The trial court having rendered judgment in favor of plaintiff, separate appeals are prosecuted by Bea Ann Ruhde and George Vernon Cassey.

In the first count of the complaint plaintiff sets forth the usual allegations of an action to quiet title. In the second count plaintiff alleges that when decedent signed the conveyance in favor of defendant Ruhde she instructed said defendant not to record the instrument until after her death and further "instructed" her that "she would continue to exercise management and control over said property and collect the rents therefrom." The complaint contains no allegation that the deed was not delivered to defendant Ruhde. In several other counts plaintiff sets forth various allegations concerning the execution of the joint tenancy deed to defendant Cassey, stating that decedent had instructed said defendant not to record the instrument until after her death, and that the deed to Cassey had been procured fraudulently, without consideration and in violation of his confidential position. The trial court filed findings sustaining the allegations of the complaint as to defendant Cassey. The court also filed findings sustaining the allegations of the complaint as to defendant Ruhde and further found that decedent did not deliver or

intend to deliver the instrument of conveyance to defendant Ruhde.

Mrs. Ruhde now contends that the findings as to non-delivery of the deed to her are without support in the evidence. She testified that decedent and the witness had lived together about five years prior to decedent's death; that in March, 1939, decedent had delivered to her a deed to the property in question and that the witness had kept the deed at all times in her possession in a little box with her insurance papers, except for the time the deed was in the office of the county recorder; that at the time of the delivery of the deed decedent told her she wanted the witness to have the property since the boys had had their share; that at the time of the delivery of the deed she gave to decedent the sum of $1; that practically all of the time after the delivery of the deed the witness received from decedent the rents from the property; that decedent "did go out and collect them because she always liked to visit with the tenants"; that decedent was the widow of a Civil War veteran and a Gold Star mother and there was discussion between the witness and decedent concerning the fact that taxes would have to be paid on the property if the deed to the witness should be recorded; that she "thought it was alright as it was"; that on April 26, 1940, decedent executed a mortgage on the property in the sum of $500, the note, but not the mortgage, being signed by the witness; that this sum of $500 was used as part payment for a home in Artesia, where the witness and decedent lived; that the deed was recorded at the suggestion of decedent shortly before her death.

The testimony of defendant Ruhde is supplemented by the testimony of a number of witnesses who stated that decedent had told them before the delivery of the deed that she intended to convey the property to her daughter and by the testimony of other witnesses who stated that decedent had told them that she had conveyed the property to her daughter. The witness R. H. Bailey testified that he boarded and roomed at defendant Ruhde's home and was present at the time of the delivery of the deed to her; that decedent handed the deed to Mrs. Ruhde saying, "Daughter, here is a deed to the property. I want you to have it, because the boys have their own homes and their own jobs and can take care of themselves, and I know if I get sick you will take care of me, and I want you to have the property"; that decedent also

said to her daughter, "To make this legal you have to give me some money," whereupon Mrs. Ruhde gave a dollar to decedent.

A presumption of delivery arose from the fact that Mrs. Ruhde, the grantee, actually had the possession of the deed and produced it in court. Although plaintiff could present evidence to rebut the presumption of delivery arising from the possession of the deed, "nothing but the most satisfactory evidence of non-delivery should prevail against the presumption." The evidence should be "clear and convincing." (*Stewart* v. *Silva,* 192 Cal. 405, 409, 410 [221 P. 191].) In the Stewart case the grantor executed a conveyance and in the presence of his attorney handed the deed to the grantee instructing the grantee not to record it until after his death and stating that he would continue to receive the interest on the property and pay the taxes. After delivery of the deed the attorney, on behalf of the grantor, prepared in the grantee's name an instrument by which the property was leased to another party. The trial court found that there had been no delivery of the deed but on appeal the judgment was reversed, the reviewing court holding that even if the trial court disbelieved the testimony of the attorney and the other witnesses who testified on behalf of the grantee with respect to the delivery of the deed, there was no evidence to overcome the presumption of delivery derived from the fact that the grantee had possession of the deed; and that the fact that the grantor at the time of the delivery expressed a desire that the deed should not be recorded until after his death and intended to exercise acts of ownership thereon during his lifetime did not prevent the delivery from being effective if the grantor did in fact intend to deliver the deed. (See, also, *Longley* v. *Brooks,* 13 Cal.2d 754 [92 P.2d 394].)

We find no evidence in the present case which destroys the positive testimony of defendant Ruhde and that of her witnesses concerning the delivery of the deed. The record is devoid of evidence that decedent instructed Mrs. Ruhde not to record the deed. Plaintiff points to the fact that the deed was kept by defendant Ruhde with papers belonging to her mother at her home but we fail to see how this circumstance is incompatible with Mrs. Ruhde's claim that the deed was delivered to her and was in her possession. A satisfactory explanation is given for the failure of Mrs. Ruhde to record the deed promptly. She also gave a reason-

able explanation of decedent's actions in collecting the rents which, it is to be recalled, were turned over to Mrs. Ruhde. Since the property was left in decedent's name to avoid payment of taxes a reasonable explanation is presented for the execution of the mortgage by decedent to raise the sum of $500 for a home for the mother and the daughter. The evidence upon which the trial court attempted to draw an inference of non-delivery of the deed is far from clear and convincing. These circumstances are not sufficiently substantial to justify a finding of non-delivery of the deed when confronted with the presumption arising from the possession of the deed by Mrs. Ruhde and the positive evidence presented by her that the deed was in fact delivered.

■ Evidence was received by the court from defendant Cassey and witnesses in his behalf to establish that decedent went to the office of a lawyer and executed the joint tenancy deed and in so doing made various statements which indicated that she then claimed to be the owner of the property in question. This testimony related to declarations and transactions which occurred long after the execution and delivery of the deed to defendant Ruhde. The testimony may have been admissible in connection with the issues involved in the allegations concerning the joint tenancy deed but they were inadmissible to defeat the title of defendant Ruhde. Declarations of a grantor after he has parted with his title tending to show retention of title are not admissible against those claiming under him. (*Ord* v. *Ord,* 99 Cal. 523 [34 P. 83]; *Ross* v. *Wellman,* 102 Cal. 1 [36 P. 402].)

Since decedent conveyed all of her interest in the property to Mrs. Ruhde, it is apparent that nothing was conveyed by the alleged delivery of the joint tenancy deed to defendant Cassey at a later date. Defendant Cassey was not a purchaser for a valuable consideration and the prior grant to his sister is conclusive as to him. (Civ. Code, sec. 1107.) It is therefore unnecessary to discuss herein his contention that the findings as to him are not supported by the evidence.

The judgment is reversed.

Moore, P. J., and McComb, J., concurred.