[Civ. No. 15167. Second Dist., Div. Two. May 3, 1946.]

JAMES B. OGG, as Executor, etc., Appellant, v. ERMA E. GUNDERSON et al., Respondents.

James B. Ogg, in pro. per., for Appellant.

Keller & Smith, Richard J. Keller and Lothrop E. Smith for Respondents.

MOORE, P. J.—The primary contention presented by appellant is that the evidence does not support the finding that the grantor executed and delivered to the grantee the deed whereby the latter became vested with title to the property described in the conveyance.

The testimony of Attorney Richard J. Keller and of defendant Nehls establishes that for some years prior to July, 1943, Attorney Ogg acted as counsellor for decedent Katerina Czech. In that month she moved into the orbit of the influence of Nehls, her business agent, and for a time thereafter relied upon him for guidance. On July 24 she requested him to prepare a deed conveying her home on Palm Avenue in Alhambra to defendant Erma E. Gunderson, hereinafter referred to as respondent. After conversing with both women at Mrs. Czech's home and after being told by that lady of her preference not to call upon Attorney Ogg concerning her gift to respondent, Nehls repaired to his office, prepared the deed, returned for the signature, explained the purport of the conveyance and after its execution affixed thereto his notarial certificate of the grantor's acknowledgment. At the same meeting Mrs. Czech stated that she wished to make a new will. Four days later, pursuant to arrangement, the ladies accompanied Nehls to the office of Attorney Keller, a stranger to Mrs. Czech, for the purpose of having him prepare for her a new will. After he had read the deed which was exhibited to him by Nehls, Mr. Keller explained in simple and intelligible words that the effect of the deed she had executed was to make a gift entitling the grantee to immediate possession and that by virtue of its delivery she could be dispossessed by the grantee. Thereupon decedent stated that

she was making the conveyance cheerfully in compensation for services of a faithful friend; wanted respondent to have the home, and took the deed from the lawyer and placed it in the hand of respondent who said "Mrs. Czech, you can live in that house just as long as you want to. I will never put you out." Respondent in turn requested Nehls to hold the deed and not to record it until after the decease of her benefactor.

After Mr. Keller had discussed the grant deed with the parties Mrs. Czech requested him to draw her a will and gave the attorney the names of the beneficiaries, but stated that she wished respondent to have the home place "right now" and not after her demise. The will was then drawn, bequeathing other property to relatives but with contingent remainder to respondent.

The next episode in the affairs of decedent was her request through Mrs. O'Dell, June 13, 1944, for Mr. Ogg to visit her in the South Pasadena Sanitarium. Following such meeting the attorney at Mrs. Czech's request applied to be appointed guardian of her person and estate. His petition for appointment listed her properties, including the home on Palm Avenue. Defendant Nehls called and conferred with Mr. Ogg concerning the guardianship of decedent. After reading the petition he made no comment upon the fact that the home place was listed among her assets. They discussed the matter of asking respondent to return from Idaho to care for decedent. Ogg then prepared a petition for authority to expend $100 a month for decedent's care and maintenance. Although both Nehls and respondent saw that such petition included the Palm Avenue property as a possession of Mrs. Czech, neither of them suggested that decedent had already executed a conveyance of the home place.

Subsequent to the last mentioned events Mrs. Czech accompanied by Mesdames Turner and O'Dell called on Mr. Ogg on September 14, 1944, and requested him to write her a new will. She described her properties and named her husband's four grandsons of Milwaukee as her devisees. At all times prior and subsequent to the publication of her will she occupied her home, collected rentals from the rear house and paid all taxes levied thereon until her decease on September 26, 1944. Thereupon Nehls filed for recordation the deed from decedent to Mrs. Gunderson.

The validity of a properly executed deed of conveyance is determined by its delivery with the concomitant intention of the grantor to transfer the property described therein to the grantee. (*Severn* v. *Ruhde,* 58 Cal.App.2d 704 [137 P.2d 466]; *Hansen* v. *Hansen,* 82 Cal.App. 786 [256 P. 290]; *Marlenee* v. *Brown,* 21 Cal.2d 668 [134 P.2d 770].)

The validity of a deed is not necessarily impaired by the fact that the grantor after delivery of the deed continued to exercise control over the realty and to collect the rentals earned thereby. The primary test is whether the grantor intended to make a present transfer, and if such was his intention the title of the property thereby passed irrevocably to the grantee. (*Severn* v. *Ruhde, supra; Stewart* v. *Silva,* 192 Cal. 405 [221 P. 191].) A gift by deed is not necessarily defeasible by subsequent acts or declarations of the grantor outside of the presence of the grantee inconsistent with the prior gift. (*Barcroft* v. *Livacich,* 35 Cal.App.2d 710 [96 P.2d 951].) While such subsequent declarations are admissible as bearing upon the question of delivery (*Belser* v. *American Trust Co.,* 125 Cal.App. 344, 352 [13 P.2d 951]; *Fisher* v. *Oliver,* 174 Cal. 781 [164 P. 800]) still that issue is to be determined by the trier of fact from all of the evidence submitted. Moreover, from the production by the grantee of the deed of gift a presumption of delivery arises and is in itself sufficient evidence to warrant a finding of the delivery and acceptance of the instrument. (*Barr* v. *Schroeder,* 32 Cal. 609; *Branson* v. *Caruthers,* 49 Cal. 374; *Tunison* v. *Chamblin,* 88 Ill. 378.)

It follows that despite the acts of decedent in claiming the ownership of her home after July, 1943, the court's finding that her conveyance to respondent was valid is conclusive in view of the testimony of reliable witnesses attesting the actual delivery of the deed with intent to make a gift. (*Hinshaw* v. *Hopkins,* 37 Cal.App.2d 230 [99 P.2d 283].)

Neither is the evidence of decedent's continued occupancy of her home after July 24, 1943, conclusive proof that she did not deliver the deed or did not intend to part with her title. (*Stewart* v. *Silva,* 192 Cal. 405, 410 [221 P. 191]; *Knudson* v. *Adams,* 137 Cal.App. 261, 269 [30 P.2d 608]; *Merritt* v. *Rey,* 104 Cal.App.700 [286 P. 510]; *Bury* v. *Young,* 98 Cal. 446 [33 P. 338, 35 Am.St.Rep. 186].) In the Merritt case the grantor remained in possession for 17 years after

his conveyance, collected rents, paid taxes, frequently mortgaged it and made improvements. In *Stewart* v. *Silva* the facts fairly parallel those in the instant case. The grantor at the time of delivery stated that he would do all of the things ordinarily done by a proprietor. His deed was not recorded until after his decease. He kept the house insured. Such evidence was unavailing as against the proof of delivery with the intent to pass title. The fact that the grantee was the grantor's goddaughter and kept house for him does not alter the principle involved. Those were facts that might have aided the trial court in finding the intent to convey at the time of delivery. The same observation may be made as to *Severn* v. *Ruhde*, 58 Cal.App.2d 704 [137 P.2d 466], which appellant attempts to distinguish by the fact that the grantee was the grantor's daughter.

In his effort to overcome the weight of the authorities that uphold the validity of the deed to respondent appellant cites *Bank of America National Trust & Savings Association* v. *Crawford*, 69 Cal.App.2d 697 [160 P.2d 169], and *Osterberg* v. *Osterberg*, 68 Cal.App.2d 254 [156 P.2d 46]. These authorities do not in the slightest support appellant's contention. Both of them were affirmances of judgments in favor of the alleged grantor, each holding that there had been no valid delivery of the deeds.

Appellant has assigned as prejudicial error the order denying his motion for a new trial. Such motion was based upon "newly discovered evidence." His affidavit avers that while he was preparing the case for trial he searched his files for a letter written to him by respondent a few days after decedent's death. In that letter, written from Idaho October 2, 1944, Mrs. Gunderson expressed disappointment at decedent's having written the later will of September 1944, urged that the testator must have been incompetent, and suggested "proving that she wasn't mentally right to make another will." The affidavit argues that such letter clearly indicates respondent considered that by the new will she had lost all rights to property in decedent's name. The letter was not newly discovered. Appellant knew of its existence and of its contents. If it had been misplaced he could have proved its substance by parol. Furthermore the trial court considered the affidavit of respondent as well as that of appellant on the hearing of the motion and was vested with a large discretion in deriving its decision to deny the motion.

It was fortified by the proof, which it had already deemed satisfactory, that decedent a year prior to her demise had made a gift of her home to respondent by delivering to her a valid conveyance of such property.

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied May 16, 1946, and appellant's petition for a hearing by the Supreme Court was denied July 2, 1946.