[Civ. No. 11309. First Appellate District, Division One.—February 15, 1941.]

MARIE HILL et al., as Executrices, etc., Respondents, v. FRED B. DONNELLY, as Executor, etc., Appellant.

48

Henry L. Walleck and Scott McReynolds for Appellant.

Roscoe R. Hess for Respondents.

PETERS, P. J.—Defendant appeals from a judgment determining that a deed naming him as a joint grantee of certain real property is "void for failure of legal delivery thereof", and that he holds the real property in trust for the benefit of the estate of Emma E. Donnelly, deceased, or for the residuary legatees named in her will. The two plaintiffs are executrices of the will of Emma E. Donnelly, and bring this action in their representative capacities. The defendant is executor of the will of deceased, and is sued both as executor and in his individual capacity. The questions presented to the trial court, and now presented on this appeal, center around the validity and legal effect of a deed naming the deceased and defendant as joint tenants of the real property in question. According to the complaint, and a supplement to the complaint filed after the trial, it is the theory of the plaintiffs that this deed was never validly delivered, or, if validly delivered, it was subject to a trust in favor of the estate of Emma E. Donnelly, or of the four residuary legatees named in her will. Defendant claims ownership of the property by virtue of the joint tenancy deed free of any claim of the plaintiffs or of the residuary legatees. The trial court found in favor of plaintiffs on both theories alleged in the complaint, and the supplement thereto.

The plaintiffs are a sister and a niece of the deceased. The defendant is a brother of the deceased. These three, together with another brother, Ben Donnelly, are named as residuary legatees in the will of deceased. During her lifetime, the deceased, unmarried, owned the property and resided on it. On June 8, 1933, she executed a deed to the property to Elizabeth Kessler, her friend and companion, who, as part of the same transaction, executed a deed conveying the property to deceased and her brother, the defendant herein, as joint tenants.

Both deeds are grant deeds containing no reservations or limitations. The deed to Kessler was recorded June 16, 1933, and the joint tenancy deed was recorded the next day. Both deeds were recorded at the request of the deceased, and both were returned to her. Upon her death on September 12, 1936, the joint tenancy deed was found in a safety deposit box to which the deceased and plaintiff Alta D. Maltby had keys.

The evidence as to whether there was an operative delivery of the deed to the defendant was highly conflicting, and would support a finding either way on that issue. Defendant testified that he did not know of the deed until nearly two years after it was executed, but he admitted that the deceased had talked the matter over with him prior to the execution of the deed. The evidence of plaintiffs also shows that the deeds were executed as part of a plan on the part of the deceased to save the costs of probate; that she remained in physical possession and control of the property and of the deeds until her death; that it was the belief of the testator that she could thus deed the property to her brother the defendant, retain complete control over it during her lifetime, and, upon her death, that he would be obligated to divide it according to the provisions of her will; that after the defendant learned of the deed he made various promises to the plaintiffs and others that he would hold the property in trust to be divided according to the provisions of the will. The testimony offered in behalf of the defendant is reasonably susceptible of the interpretation that the deceased intended to deed the property to defendant without limitation, and intended that the deed should become operative at the time of its execution.

 Whether a deed has in fact been delivered, in a legal sense, is dependent upon whether the grantor intended that the deed should be presently operative. This intent is a question of fact dependent upon all the circumstances surrounding the transaction. (See cases collected and commented on in 9 Cal. Jur., p. 153, sec. 52.) Acknowledgment and recordation create a presumption of delivery, while continued possession of the deed by the grantor raises a presumption of nondelivery. (See cases collected and commented on in 9 Cal. Jur., p. 184, sec. 73, et seq.) The trial court was thus presented with conflicting evidence and conflicting presumptions on the vital question of delivery. The theory upon which the trial court resolved this conflict is not clear. It found (finding V) that when the deeds were executed the deceased "desired and

intended to retain control of said real property during her lifetime and to save expenses incident to the transfer of her property at the time of her death, and that she further desired and intended that her brother, the defendant Fred B. Donnelly, at her death, should divide the same, or the proceeds of the sale thereof, or convey the same, to and for the benefit of the persons entitled to her property as provided in her Will that she might leave at the time of her death. That it was not at said or any other time the desire or intent of said deceased to make a gift of said real property to said defendant as his own.'' Whether that finding is based on the theory of a valid delivery subject to a trust, or an invalid delivery, does not clearly appear.

In finding VI the court found: ''That in furtherance of said intent, said deceased conceived the plan of executing a deed thereof to a third party, and causing to be executed by said third party, a joint tenancy deed thereof to herself and the said Fred B. Donnelly, *without the delivery of such joint tenancy deed to the said Fred B. Donnelly.''*

Finding VII is to the effect that the deeds were prepared at the request of deceased by a real estate broker and notary public, while finding VIII sets forth the execution and recordation of the deeds. Finding IX is to the effect that after recordation the deeds were returned to the deceased and were found in her safety deposit box at the time of her death. Finding X sets forth that the defendant furnished no consideration for the deed in question. Finding XI reads as follows: *''That neither of said deeds was ever in fact delivered to, or in the possession of, the defendant Fred B. Donnelly,* or any agent of said defendant, prior to the death of said deceased. That about two years after the execution of said joint tenancy deed, the said deceased informed defendant that she had placed said property in the names of herself and the said defendant, but that said defendant Fred B. Donnelly did not know at that time that there was a conveyance in the form of a joint tenancy deed and did not know of the existence of a joint tenancy deed until about May 1936, at which time said defendant obtained information from Marie Hill, a sister of deceased, to the effect that said joint tenancy deed was recorded as aforesaid. That at the time of the first knowledge of the said defendant of the existence of said joint tenancy deed, conveying said real property to the said deceased and to the said defendant in joint tenancy, the said

defendant indicated no acceptance of said joint tenancy deed or any intention with respect to the same except to convey said real property in the manner directed by the Will of said deceased. That on no occasion did the said deceased ever inform the said defendant that she had any intention of giving said real property to said defendant as his own, or that she had accepted delivery of said joint tenancy deed as an agent of said defendant for his individual benefit. That said deceased accepted delivery of said joint tenancy deed only with the intention that any interest conveyed by it to the defendant should be held by the said defendant for the benefit of her estate at the time of her death and the persons entitled thereto under the terms of her Will.''

It is further found that it was the intention of deceased *"and the defendant so promised the deceased"* to divide the property among the persons entitled thereto under the will of deceased; that at no time prior to the death of deceased did defendant accept a conveyance to himself; that deceased remained in possession of the property until her death; that in May, 1936, it was the intent of defendant to divide the property as set forth in the will.

The same confusion disclosed by the findings is carried into the judgment. In paragraph 1 of the judgment it is ordered, adjudged and decreed that ''any claim of the defendant, Fred B. Donnelly, in his individual capacity'' to the property arising by reason of the deed ''is held by said defendant Fred B. Donnelly for the benefit of the estate of said deceased, Emma E. Donnelly, and the persons entitled thereto under her Will.'' Paragraph 2 of the judgment reads as follows: ''That said joint tenancy deed is void for failure of legal delivery thereof to the said defendant Fred B. Donnelly and for failure of the acceptance thereof by the said Fred B. Donnelly.'' By paragraph 3 defendant is ordered in his individual capacity to execute a deed to the property to himself as executor and to plaintiffs as executrices of the will of deceased.

We are thus faced with a situation where the trial court found, on conflicting evidence, that there was no delivery of the deed. If that is all the court had found, that would be the end of the case, inasmuch as that finding is supported by the evidence. But then the court found, in effect, that defendant held the property in trust for those mentioned in the will of the deceased. This finding is based on the theory of a valid delivery subject to a trust. The two find-

ings are in irreconcilable conflict. It is impossible to ascertain what the trial court decided. If there was a valid delivery, as implied by the findings relating to the trust, then we would be faced with the question as to whether such delivery was subject to the trust. There is no evidence that the deeds were executed in reliance on the promise of the defendant to hold the property in trust for those named in the will, nor, in fact, is there any direct evidence that he promised the deceased, after the deeds were executed, that he would hold the property subject to the trust. Statements made to third persons not the agents or representatives of the deceased certainly could not create the trust. Thus, had the court simply found that there was a delivery, and that there was a trust, we would be compelled to hold that there is no evidence to support the trust. The result would be that there would be an absolute delivery.

The result of this analysis leads to the conclusion that the judgment must be reversed. The trial court has found, and adjudged, that there was no valid delivery. It has likewise found there was a valid delivery subject to a trust. In so far as the trust is concerned, it is very doubtful if the evidence will support the finding. ■ Where there are contradictory and irreconcilable findings on a material issue, and the determination of them one way or the other is essential to the correctness of the judgment, the judgment cannot stand. The rule is thus stated in *Hollywood Cleaning & P. Co.* v. *Hollywood L. Service,* 217 Cal. 131, 137 [17 Pac. (2d) 712] : ''Although it is true that findings must be liberally construed to support the judgment if possible, it is equally true that where there are contradictory, irreconcilable findings about matters material to a proper disposition of the case, the appellate court can do nothing but reverse the case. (*Learned* v. *Castle,* 78 Cal. 454 [18 Pac. 872, 21 Pac. 11] ; *Estep* v. *Armstrong,* 91 Cal. 659 [27 Pac. 1091] ; *Los Angeles etc. Land Co.* v. *Marr,* 187 Cal. 126 [200 Pac. 1051] ; *Clavey* v. *Loney,* 80 Cal. App. 20 [251 Pac. 232] ; *Meyer* v. *White,* 54 Cal. App. 293 [201 Pac. 801].)'' (See, also, *Mohun* v. *Timm,* 20 Cal. App. (2d) 136 [66 Pac. (2d) 701] ; *Vuich* v. *Smith,* 140 Cal. App. 453 [35 Pac. (2d) 365] ; *Darrah* v. *Lang,* 119 Cal. App. 552 [6 Pac. (2d) 989] ; *Boyle* v. *Boyle,* 97 Cal. App. 703 [276 Pac. 118] ; *Huling* v. *Seccombe,* 88 Cal. App. 238 [263 Pac. 362] ; *Reak* v. *Borsi,* 55 Cal. App. 169 [202 Pac. 951] ; *Johnstone* v. *Gloster,* 49 Cal. App. 750 [194 Pac. 504].)

For the foregoing reasons the judgment should be, and hereby is, reversed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied March 17, 1941, and respondents' petition for a hearing by the Supreme Court was denied April 16, 1941.