114 Cal.App.2d 354 (1952)
Estate of JOHN GALVIN, Deceased. JOHN F. GALVIN, Individually and as Executor, etc., Appellant,
v.
NORA O'LEARY et al., Respondents.
Civ. No. 15418. 
California Court of Appeals. First Dist., Div. One. 
Nov. 25, 1952.
 Mancuso, Herron & Winn for Appellant.
 John B. Ehlen for Respondents.
 BRAY, J.
 Appeal by John F. Galvin individually and as executor from a portion of an order of the probate court, sustaining an objection to the executor's first and final account and petition for distribution. The effect of the portion of the order appealed from is to require the executor to inventory and account for certain real property claimed by appellant individually and which the court found belongs to the estate.
 Questions Presented
 1. Is there substantial evidence to support the court's finding of nondelivery of the deed, in view of appellant's testimony and the presumption arising from his possession of it? 2. Is the appeal timely?
 Record
 The will of decedent of which appellant is executor left a legacy of $7,000 to a niece, Peggy O'Leary, one of $4,000 to a niece, Nora O'Leary, and one of $4,000 to his sister, Mrs. Annie O'Leary. The residue of his estate the testator left to his nephew, appellant. The three legatees, who live in Ireland, filed objections to the account, because of appellant's failure to inventory and include in the account the real property which had been decedent's home, and the moneys in two banks which prior to the death of decedent were in joint accounts with appellant. At the hearing objection to the noninclusion of the moneys was withdrawn. Appellant produced a deed of gift to him of the home property. Issue was joined as to its delivery. The court found (1) that the deed was never delivered with intention to be presently operative or to presently vest title in the grantee, and (2) that at no time was it physically delivered to the grantee.
 Evidence
 Over a year prior to a contemplated trip to the old country, decedent, an 80-year-old Irishman, transferred in the presence of appellant, into joint accounts with appellant, two of his bank accounts, which at the time of his death had balances of $10,532.70 and $14,950.77 respectively. Approximately 15 days later the deed in question was executed. Appellant testified that his uncle told him that he wanted to turn everything over to the nephew for "the purpose *357 of avoiding probate expenses ... or to have any legal entanglements of any kind at all"; also that decedent did not want appellant to work any more as the latter had had a heart attack. On April 15, 1948, decedent and appellant went to see Doherty, a realtor and notary public and an old friend of decedent. Appellant did not recall the conversation in the presence of the notary other than that decedent instructed the latter to draw the deed. Appellant did not remember whether the deed was drawn at that time. Later that day, according to appellant, decedent and he returned to Doherty's office. Appellant is not sure whether the deed had been signed before that or was then signed. The notary handed the deed to decedent in appellant's presence. Then "somewhere between going out the door and outside of the door" and not in Doherty's presence decedent handed appellant the deed. Thereafter, appellant claims, he kept the deed in one of his own safe deposit boxes (he does not remember which) "and at home," and that it was never placed in the joint tenancy safe deposit box maintained by decedent and appellant where the joint tenancy bank books were kept. A little over a year after executing the deed decedent went to Ireland for a trip, remaining there until his death. A Mrs. Dearborn, a tenant and evidently the manager of the property, testified that after these transfers were made, decedent told her that his relatives had tried to buy the property from him, that many of them wanted the property, that since he wanted friendly relations with his family, he asked her not to reveal to them that he had given all of his estate to appellant by deed of gift.
 A week or two before the uncle's death appellant learned that he had had a heart attack. He died Sunday, August 28, 1949. On the preceding Friday appellant went by auto to La Honda with Dr. and Mrs. Commins and their niece, taking the deed with him. Dr. Commins did not see the deed but testified that on the trip appellant made some reference to having it with him. A telegram to appellant notifying appellant of the death was received by appellant's mother early on Monday morning. That morning appellant and the Commins returned to San Francisco, going immediately to the bank where the joint safe deposit box of decedent and appellant was. There, appellant claims he withdrew only the two joint deposit bank books. He immediately went to the two banks and had these deposits transferred to his own name. *358 Then he recorded the deed. On returning home he was given the telegram and learned for the first time of his uncle's death. He testified that the reason that he did not record the deed before was that he understood that as it was notarized he thought that was all that was necessary. "Maybe a week or two" prior, his attorney suggested that he have the deed recorded. Dr. Commins testified that before decedent went to Ireland, the latter stated to the doctor's wife with reference to some plants in the garden, that appellant "can give them to you--it is his place." Decedent also asked the doctor to influence appellant to quit work "because he has plenty of money now," intimating that he, decedent, had given him the money.
 At one place in her testimony Mrs. Dearborn stated that decedent had told her he had given the property to appellant "because he knew he would take good care of it for him." (Emphasis added.) When this answer was read to her, she denied she said it and then retracted the statement. More important, however, is the following discrediting of a portion of her testimony. She testified that shortly before decedent left for Ireland, in his own handwriting he wrote the name, address, etc., of the nephew so that, if necessary, she could get in touch with the latter. This writing is in evidence together with exemplars of decedent's admitted handwriting and signature. While the court made no direct finding on the subject, it does not take a handwriting expert to determine that the handwriting could not possibly have been that of decedent.
 Sufficiency of Evidence
 [1] Appellant contends that there is not sufficient evidence to overcome his testimony and the presumption of delivery arising from his possession of the deed. In determining the sufficiency of the court's finding on the subject we have only to determine if there is any substantial evidence, or reasonable inferences therefrom to support it. We find ample evidence to do so. At the outset, appellant's version of the circumstances under which he claims to have received the deed are refuted by Doherty. The latter testified that the decedent and appellant were together when decedent instructed him to draw the deed, saying that he wanted the property to go to his nephew "in case anything happened to him." Decedent alone returned to secure the deed. Decedent then signed the deed. Doherty acknowledged it, placed *359 it in an envelope and handed it to decedent, who left with it. Doherty's recollection is clear that appellant was not there. If Doherty's testimony is true (and the trial court evidently believed it) decedent did not give appellant the deed, as the latter claims he did. Coupling appellant's false testimony in this regard with the other circumstances hereafter related and the fact that appellant had access to the joint safe deposit box where it is most likely decedent would have kept the deed, a strong inference arises that appellant did not come into possession of it until the Monday morning after the uncle's death when, prior to recording the deed, appellant admittedly went to that box.
 The property consisted of two flats and a basement apartment. The flats were rented out and decedent lived in the basement. After executing the deed decedent continued to live in the premises, and to collect the rents. These he kept in a bank account of his own, in which he also deposited his pension. While away, Mrs. Dearborn managed the property for him, depositing the rentals for him in this bank account and accounting to decedent by mail. Neither decedent nor Mrs. Dearborn ever accounted to appellant. In January, 1949, Doherty wrote a policy of fire insurance on the property, loss payable to decedent as the insured. Appellant did not file a gift tax return during the year he claims he received the deed. He testified he did not know he was required to. While the uncle was in Ireland, appellant wrote him saying, "I just talked to Joe Kearney at your house and he said to tell you everything is going fine." (Emphasis added.)
 On the question of whether by the deed decedent intended to divest himself of title (see Fisher v. Oliver, 174 Cal. 781, 788 [164 P. 800], and McCarthy v. McCarthy, 82 Cal.App.2d 166 [185 P.2d 821]), two letters written by decedent and his will are significant. A letter written about August 3, 1948, three and a half months after the execution of the deed, stated: "We [i.e., his wife and he] Had Some Good Property 3 Nice Peices All in San Francisco. I Have Sold two Places and Kept this where I am Now Living its a nice Home and Has a Good Income." One written September 29, 1948, stated: "Yes I am Glad I Sold My two Places. I Got a Good Price and I Let Them Go. I Only Got this House where I Now Live and I thing I will Keep this One its Hard to Find a Place to Live Houses are very Scarce and *360 very Expensive to Buy So I will Leave well Enough alone and Keep what I Got though I Could Get a Big Price But would Have no Place to Go to this is the First Place We Ever Had and I dont want to Sell it."
 Twenty days before his death, August 8, 1949, decedent executed his will bequeathing respondents a total sum of $15,000. At that time, exclusive of the real property in question, decedent's entire estate consisted of $2,199.22. Appellant presented this will for probate and is now its executor. He thereby vouches for decedent's being of sound mind at the time of its execution. It is difficult to reconcile decedent's action in making bequests totaling $15,000 (which could only be obtained from a sale of the real property) on any other basis than that he had intended that the deed, as he told Doherty, was, in effect, to be testamentary in character.
 Presumption
 [2] Section 1055, Civil Code, cited by appellant, provides "A grant duly executed is presumed to have been delivered at its date." The presumption created by this section pertains only to the date, not to the fact of delivery. (Miller v. Jansen, 21 Cal.2d 473 [132 P.2d 801].) There is some confusion in the authorities as to whether apart from the effect of this section, possession of a deed raises a presumption or an inference. Central Trust Co. v. Stoddard, 4 Cal.App. 647 [88 P. 806], refers to it as a presumption which can be overcome only by clear and convincing evidence. Thompson v. McKenna, 22 Cal.App. 129 [133 P. 512], holds that possession of a deed constitutes prima facie evidence of delivery. (Appellant relies on this case greatly because of its additional holding that the testimony of persons present at the execution of the deed that they did not see it delivered was insufficient to overcome the fact established by its possession. Such holding is not in point here. There is a great and obvious difference between testimony as to not seeing something which might have happened between persons present on a particular occasion, and testimony that one of the principal actors in the alleged drama was not present at all, which, if true, would necessarily have meant there could have been no performance.) There are many other cases holding in favor of a presumption, among them Stewart v. Silva, 192 Cal. 405 [221 P. 191], and California Trust Co. v. Hughes, 111 Cal.App.2d 717 [245 P.2d 374]. In Ephraim v. Oakland Title etc. Co., 54 Cal.App. 379 201 P. 946], the court states: "The possession of the deed *361 by the plaintiff was some evidence of its delivery, and was sufficient in the absence of any contradictory evidence to establish it." (P. 383; emphasis added.) Hill v. Donnelly, 43 Cal.App.2d 47 [110 P.2d 135], holds the acknowledgment and recording of a deed as well as possession of its raises a presumption of delivery. Miller v. Jansen, supra, 21 Cal.2d 473, refers to possession raising an "inference" of delivery, citing as support therefor thirteen cases, including Drummond v. Drummond, 39 Cal.App.2d 418 [103 P.2d 217], infra. In Hennelly v. Bank of America, 102 Cal.App.2d 754 [228 P.2d 79], the court pointed out that the defendant contended that possession of the deed raised a presumption of delivery while the plaintiff claimed it merely raised an inference. Both parties cited Miller v. Jansen, supra, 21 Cal.2d 473, as support for their positions. The court stated that in that case "The Supreme Court there held that a duly signed and delivered instrument is presumed to have been delivered at its date, not that it was presumed to have been delivered." (P. 758.) Without expressly determining in so many words the question of whether the result of possession is a presumption or an inference, the court held (p. 758): "Under these circumstances possession by the grantee gives rise to an inference that the instrument was duly delivered." (Miller v. Jansen, supra, p. 477, and cases cited.)" As Miller v. Jansen had held that possession only raised an inference as to delivery although a presumption as to date, it would appear that the court had finally settled the confusion by deciding that possession raises an inference rather than a presumption. As to this confusion between presumption and inference the language of Mudrick v. Market Street Ry. Co., 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533], is applicable here. There the court was considering instructions on res ipsa loquitur which stated that the doctrine raised a presumption instead of an inference. The court said (p. 734): "While it appears to be well settled that under the rule of res ipsa loquitur an inference and not a presumption arises on proof by plaintiff of the necessary facts [citations], these terms are often erroneously used interchangeably, and as conveying the same meaning. We find that many lawyers and courts as well make this same mistake. We question whether the ordinary layman, to say nothing of many members of our profession, clearly comprehends the difference in the meaning of these two expressions. While courts have frequently called attention to the erroneous use of the terms, 'presume' and 'presumption' in stating the rule of res ipsa *362 loquitur, no decision has been called to our attention in which a judgment has been reversed by reason of the erroneous use of these words." [3] Whether possession raises an inference or a presumption is not too material in our case for the reason that the contradiction of appellant's testimony as to how he possessed the deed and the other circumstances of the case constitute the strong and convincing evidence which it is said is necessary to overcome a presumption."
 Stewart v. Silva, supra, 192 Cal. 405, strongly relied on by appellant, in which the Supreme Court reversed the finding of nondelivery by the trial court, is not in point here. There the attorney who prepared the deed, his secretary and the grantee all testified to the deed's delivery. Six witnesses testified that the grantor told them that he had deeded the property to the grantee. The deed at all times since execution was in the possession of the grantee. The main evidence to overcome this showing was that the insurance policy on the house was retained in the grantor's name and he paid the taxes. The court held that possession of the deed constituted prima facie evidence of delivery and that the "evidence of the continued dealing with the property by the grantor was not necessarily in conflict with the actual situation disclosed by the evidence as offered by defendant." (P. 410.) The court recognized, however, the fact that this dealing with the property by the grantor did raise an inference of nondelivery but held "... the inferences arising therefrom of nondelivery would not be sufficient under the circumstances to overcome the prima facie case arising from the possession of the deed by the grantee. ... If the trial court disbelieved all the witnesses who testified on behalf of the defendant with reference to the delivery of the deed, there is no evidence to overcome the presumption of delivery derived from the fact that the grantee had possession of the deed. If the trial court believed the testimony of these witnesses, it could not escape a finding of fact that the deed was delivered." (Pp. 410, 411.) We have no such situation in our case.
 Appellant cites cases similar to Drummond v. Drummond, supra, 39 Cal.App.2d 418, for the proposition that manual delivery of a deed to the grantee is not essential to the passing of title. Just how this helps defendant does not appear in view of his testimony that there was a manual delivery, which testimony the trial court did not believe. Again, cases like the Drummond case and Shaver v. Canfield, 21 Cal.App.2d 734 [70 P.2d 507], holding that subsequent collection of rental, *363 and other acts of control by the grantor, do not vitiate the title of a grantee where there has been a delivery, are not in point. Here those acts were not shown for the purpose of vitiating the deed. They were circumstances which if standing alone might not evidence nondelivery, but which added to all the other circumstances in the case strongly show that there was no delivery.
 Appellant's main contention is that his testimony as to the delivery of the deed is uncontradicted and because of that fact and the presumption which follows from his possession of the deed, the trial court is precluded from considering the other circumstances of the case and finding adversely to him. First, the premise is unsound, because his testimony as to delivery is directly contradicted by that of the notary. How could the grantor have delivered appellant the deed if as the notary testified appellant was not present at the time and place where appellant claims he received the deed? [4] Secondly, the trial court is not bound to accept an interested party's testimony as true, even though it were not directly contradicted, particularly where, as here, the many circumstances constitute a contradiction. In Lohman v. Lohman, 29 Cal.2d 144, 149 [173 P.2d 657], the court said: "Moreover, a trial judge is not required to accept as true the sworn testimony of a witness, even in the absence of evidence directly contradicting it, ..." [5] In passing on appellant's credibility, the court was authorized to consider his interest in the result of the case. (Hennelly v. Bank of America, supra, 102 Cal.App.2d 754, 759.) [6, 7] Whether there was a delivery "involved a disputed question of fact which it was the function of the trial judge to determine from the facts and circumstances in evidence. It was for him to pass upon the credibility of the witnesses, to weigh their testimony, and draw therefrom his inferences. [Citations.] In all such cases evidence as to the delivery of a deed, not recorded until after the chief actor's death, must necessarily be closely scrutinized; and the law demands that such a deed shall have in its support evidence clear, unequivocal and convincing, such as satisfies the court of actual intent to pass immediate title. It is manifest from the written decision of the trial court that the judge did not find the evidence in behalf of the defendant to be of a convincing character, and concluded that the preponderance of the evidence was in favor of plaintiffs. Though Mrs. Matthieson was not directly impeached, yet the judge was not bound to give implicit faith to her testimony. He was *364 justified in testing its verity by the conduct of the parties, the distinctive characteristics of the transaction and all the attendant circumstances. [Citations.]" (Morgan v. Matthieson, 103 Cal.App. 510, 517 [285 P. 325]; emphasis added.)
 [8] Finally, the presumption is a rebuttable one and may be (and here was) contradicted by circumstantial evidence which was clear and convincing.
 Timeliness of Appeal
 [9] Respondents contend that the notice of appeal, being filed more than 60 days after entry of the order appealed from, is too late. However, appellant properly moved for a new trial. (See Prob. Code, 1231; Estate of Perkins, 21 Cal.2d 561 [134 P.2d 231].) The notice of appeal was filed within the statutory period after the denial of the motion for new trial. Hence the appeal is timely.
 The order is affirmed.
 Peters, P. J., and Wood (Fred B.), J., concurred.