[Civ. No. 19159. Second Dist., Div. Three. June 23, 1953.]

VICTOR MALLEY, Appellant, v. SIERRA MANUFACTURING COMPANY (a Limited Partnership) et al., Respondents.

Thompson & Thompson and Benjamin J. Goodman for Appellant.

Frederick G. Stoehr for Respondents.

WOOD (Parker), J.—Action for damages for alleged breach of contract. Defendant Sierra Manufacturing Company, a limited partnership, answered the first amended complaint and also filed a cross-complaint. The judgment was that plaintiff take nothing on said complaint, and that the cross-complainant recover from cross-defendant on the cross-complaint the sum of $3,000. Plaintiff appeals from the judgment.

In 1945, plaintiff was engaged in the business of manufacturing and selling an electric broiler, referred to at the

trial as the Malley Kitchen Master. On November 13, 1945, plaintiff and Sierra Manufacturing Company, hereinafter referred to as defendant, entered into a written agreement which provided that defendant would perform certain work consisting of metal spinning, polishing, punching holes and riveting specified parts (used in the manufacture of the broiler), which parts were to be spun from 12, 16 and 17 inch aluminum blanks ("circles" of aluminum sheet) of specified weights. The agreement provided further that defendant would do the work for a flat price of $1.35 a set; plaintiff would "supply all the material used to manufacture" the said items, and would supply chucks, three foot presses and dies for punching holes; plaintiff would "give" to the Sierra Manufacturing Company, and defendant would complete, a minimum of work amounting to $15,000 annually, and defendant agreed to complete such contracts as given to it in excess of $15,000 and up to $50,000 per annum. It was provided further therein that neither party would be liable in damages occasioned by a shortage of materials, labor difficulties, or causes beyond the reasonable control of the respective parties. A copy of said agreement was made a part of the amended complaint.

It was alleged in the amended complaint that, as required by said contract, plaintiff supplied to defendants the chucks, three foot presses and dies, all of which were in the possession of defendants prior to signing the agreement and ever since have been in their possession. It was alleged in paragraph IX of said complaint that, in furtherance of said contract, on January 10, 1946, plaintiff in writing, ordered defendants to make 15,000 sets at $1.35 per set, at the rate of, "as stated in said written order, 'up to 1,000 sets weekly' "; said order was accepted by defendants; when said order was given, it was agreed and understood that defendants would make up sets so that they would be ready for pick-up by plaintiff at the rate of 1,000 sets a week commencing January 17, 1946, and that defendants were to complete said sets so that on or before April 25, 1946, all of said completed sets would have been picked up by plaintiff. It was alleged in paragraph XI of said complaint that up to and including April 30, 1946, defendants failed to perform the contract and the January 10, 1946 order, by failing to complete the 15,000 sets for pick-up by plaintiff in the manner described in paragraph IX of said complaint, and defendants completed for delivery only various parts of sets (setting forth therein the parts which

were completed). It was alleged further in said complaint, in part, as follows: at the time said order was given, defendants were in possession of approximately 10,000 pounds of aluminum sheets theretofore supplied by plaintiff; in addition thereto plaintiff caused to be delivered to defendants materials far in excess of the amount required, and plaintiff continuously kept defendants supplied with all materials, and performed everything required to be done by plaintiff under the said contract to enable defendants to compete and have said sets ready for pick-up by plaintiff in the manner described in paragraph IX of said complaint; in April, 1946, plaintiff and defendants conferred about the failure of defendants to perform the contract, and at that time plaintiff told defendants he was about to go on a trip to promote the sale of housewares which he manufactured, and he stated it would be pointless to make the trip unless defendants assured him of delivery of "at least 5,000 sets during the months of May and June, 1946," and thereafter 500 sets a week, all within the limitations of the original contract; defendants assured plaintiff they would do so, whereupon plaintiff ordered defendants to make 5,000 sets for May and June, 1946, and thereafter 500 sets a week; in furtherance of said further order, plaintiff caused to be delivered to defendants materials far in excess of that required, and plaintiff performed everything required to be done by him under the contract to enable defendants to fill the order given in April, 1946; upon the assurance of defendants that they would make up the order given in April, 1946, plaintiff went on the trip, expended approximately $1,000 as expenses thereof, and obtained orders for the broilers amounting to approximately $70,000, to be shipped to plaintiff's customers during July, August, and September, 1946; from May 1, 1946 to and including December, 1946, defendants completed various parts of sets, specified therein (the quantities of parts allegedly completed during each month were specifically set forth—and were less than the quantities required by the purported orders); by reason of the failure of defendants to perform everything required of them under the contract plaintiff lost large profits and many customers, and the good will of his business suffered great damage; plaintiff has been damaged in the sum of $85,000.

As a second cause of action it was alleged, in part, that in September, 1946, plaintiff and defendants entered into

an oral agreement which provided that defendants would manufacture for plaintiff 6,000 broilers for $1.86 per broiler; said broilers would be available for delivery to plaintiff not later than December 31, 1946; as part of said oral contract plaintiff was to supply defendants with necessary materials and parts, and defendants were to have the use of certain chucks, foot presses and dies, which were and ever since have been in the possession of defendants; plaintiff caused to be delivered to defendants materials and parts far in excess of the amount required and plaintiff performed everything required to be done by him under said oral contract; at the time said contract was entered into, defendants knew plaintiff would rely upon defendants for the supply of all broilers as per said contract, and that plaintiff would not manufacture or buy any other broilers in his business; by June, 1947, defendants had made only 3,626 broilers and have failed and refused to make up the balance of the broilers as required by the contract; by reason of such failure of defendants to perform the contract, plaintiff suffered damages in the sum of $12,500.

As a third cause of action it was alleged, in part, that within four years last past plaintiff and defendants entered into a written contract which provided that defendants would manufacture 10,000 hinges for $350 and 10,000 element guards and fingers for $500, as per sample submitted by plaintiff, said work to be done in a good and workmanlike manner; defendants did not make said hinges as per the sample, nor in a good and workmanlike manner; as a result of which, the hinges were entirely useless to plaintiff; prior to completion of the hinges, plaintiff paid defendants $350 therefor; prior to the completion of the guards, defendants charged plaintiff's account for full delivery, but delivered to plaintiff only 5,500 of said guards; in consequence thereof defendants received payment for 4,500 guards at 5 cents each, or a total of $225 for guards which were not delivered; by virtue of the foregoing, defendants became indebted to plaintiff in the sums of $350 and $225.

As a fourth cause of action it was alleged, in part, that on March 23, 1946, plaintiff and defendants entered into a written contract which provided that defendants, for the sum of $425, would make for plaintiff, in a good and workmanlike manner, a die for certain hinges that plaintiff used in the assembly of the Malley Kitchen Master; defendants made a die but said die was not made in a good and workmanlike man-

ner; in consequence thereof, it broke when defendants used it for the manufacture of said hinges; plaintiff paid defendants $425 for said die prior to the breaking of the die; plaintiff demanded that defendants repay said $425, and defendants refused to do so.

The answer denied the material allegations of the amended complaint. Paragraph VI of said answer denied the allegations of paragraph IX of the amended complaint, except that it admitted that an order was placed on January 10, 1946, for "up to 1,000 sets weekly," but it alleged that the said phrase (just quoted) was intended to limit the number which plaintiff would be required *to accept* to 1,000 per week, and was further intended to be subject to the number of sets which the defendant could manufacture from the raw material with the chucks, presses and dies furnished by plaintiff. Paragraph VIII of said answer denied the allegations of paragraph XI of the amended complaint, except that it admitted that defendant manufactured approximately the number of sets alleged in said paragraph XI; and that paragraph VIII alleged that defendant manufactured all the sets possible with the material and equipment furnished by plaintiff.

The cross-complaint alleged three causes of action. In the first cause of action it was alleged that cross-defendant was indebted to cross-complainant in the sum of $1,010.06 for work performed; and in the second cause of action it was alleged that cross-defendant was indebted to cross-complainant in the same sum on an account stated. In the third cause of action it was alleged that the written agreement entered into by said parties on November 13, 1945, was modified, by mutual consent, increasing the price from time to time; cross-complainant performed everything required by said agreement to be performed by it; cross-complainant employed skilled and unskilled labor, engineering skill, rearranged its plant, installed machinery and equipment, and established an assembly line for the sole purpose of carrying out the provisions of said agreement, at a cost of $8,000; cross-complainant was prevented from using said installation, labor and engineering by reason of the breach of said agreement by cross-defendant, and the entire amount of said expenditure was thereby lost; cross-defendant failed to comply with said agreement by failing to supply to cross-complainant proper and adequate materials, equipment (tools, patterns, plans) and designs with which to do the work provided for by the agreement; cross-

defendant took from cross-complainant's possession tools and equipment necessary to perform said work; materials, tools and equipment furnished by cross-defendant were unsuitable to perform the work provided for in said agreement; cross-defendant failed to place orders in accordance with said agreement, and he refused to accept and pay for merchandise manufactured pursuant to said agreement and thereby prevented completion of the agreement according to its terms; by reason of cross-defendant's breach of said agreement, cross-complainant was damaged in the sum of $8,000 (as special damages) and in the further sum of $15,000 as general damages.

Appellant (plaintiff) contends that the findings of fact are inconsistent, irreconcilable, and do not support the judgment. The findings specifically referred to are findings II, III, XXII, XXVI, XXIX and XXX.

In finding number II the court found, with respect to paragraph IX of the amended complaint, that the order of January 10, 1946, contained the provision "Shipping date —Up to 1000 weekly"; that the phrase "up to 1000 weekly" was intended to mean that the defendant agreed to deliver any number up to 1,000 broiler sets per week depending upon the availability of materials.

In finding number III the court found that the allegations of paragraph XI of the amended complaint were true. Paragraph XI of said complaint, as above stated, alleged as follows: "That up until and including April 30, 1946, defendants failed to perform the aforementioned contract and the aforementioned January 10, 1946 order given defendants by plaintiff, by failing to complete the aforementioned 15,000 sets for pick-up by plaintiff as and in the manner described in paragraph IX hereof, and defendants completed for delivery to plaintiff only the various parts of sets as follows: [enumerating the parts]." Paragraph IX of said complaint alleged, as above shown, that when the order containing the phrase "up to 1000 sets weekly" was given, it was "agreed and understood" by the order that "defendants would make up said sets so same would be ready for pick-up by plaintiff at the rate of 1,000 sets a week commencing January 17, 1946."

It thus appears that, by finding number II, the court found that the phrase "up to 1000 sets weekly" was intended to mean that defendants might deliver any number of sets up to 1,000 a week; and that, by finding number III, the court found that (as alleged in paragraph XI of the amended com-

plaint) the defendant failed to perform the contract of November 13, 1945, and "the order" of January 10, 1946, by failing to complete the 15,000 sets (in the manner described in paragraph IX of the amended complaint) at the rate of 1,000 sets a week. Said findings are, in effect, that defendant was not required to complete 1,000 sets a week, but might deliver any number of sets up to 1,000 a week; and that defendant was required to complete 1,000 sets a week. Said findings are therefore inconsistent.

In finding number XXII the court found, in part, that the allegations and denials of paragraphs VI and VIII of the answer to said amended complaint were true. As above shown, paragraph VI of said answer denied the allegations of paragraph IX of said complaint, except it admitted that the order of January 10, 1946, was for "up to 1000 sets weekly"; and said paragraph VI alleged that said phrase (just quoted) was intended to limit the number of sets which plaintiff would be required to accept to 1,000 a week, and was intended to be subject to the number of sets which defendant could manufacture from the raw material with the equipment furnished by plaintiff. In other words, that part of finding XXII was to the effect that defendant was not required to complete 1,000 sets a week. It therefore appears that said finding XXII, insofar as it relates to paragraph VI of the answer, is inconsistent with finding number III (which was to the effect that defendant was required to complete 1,000 sets a week). Paragraph VIII of the answer, as above shown, denied the allegations of paragraph XI of the amended complaint, except that it admitted defendant manufactured approximately the number of sets alleged in said paragraph XI, and it alleged that defendant manufactured all the sets possible with the material and equipment furnished by defendant. In other words, that part of finding XXII was to the effect that defendant was not required to complete 1,000 sets a week. It therefore appears that finding number XXII, insofar as it relates to paragraph number VIII of the answer is in conflict with finding number III (that the allegations of paragraph XI of the amended complaint were true), which finding was, as above stated, to the effect that defendant was required to complete 1,000 sets a week. In summary, it appears that the trial court found, in substance, that defendant was required to deliver any number of sets up to 1,000 a week (finding No. II) ; that defendant was required to complete 1,000 sets a week (finding No. III) ;

that the phrase "up to 1000 sets weekly" was intended to limit the number of sets which plaintiff would be required *to accept* to 1,000 per week (finding No. XXII regarding paragraph VI of answer); and that defendant was not required to complete *1,000* sets a week (finding No. XXII regarding paragraph VIII of answer). Those findings are contradictory and irreconcilable. Whether defendant was required to complete 1,000 sets a week or was required only to complete any number up to but not in excess of 1,000 sets a week was a material issue since the action for damages was based upon alleged breach of contract by defendants. ▮ "Where there are contradictory and irreconcilable findings on a material issue, and the determination of them one way or the other is essential to the correctness of the judgment, the judgment cannot stand." (*Hill* v. *Donnelly*, 43 Cal.App.2d 47, 52 [110 P.2d 135].)

By reason of the above conclusions, it is not necessary to discuss other contentions on appeal.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.