[Civ. No. 15762. First Dist., Div. One. Feb. 26, 1954.]

PAULINE PRIEST, Respondent, v. MATTHEW BELL, Defendant; ANTONE L. RODRIGUES et al., Appellants.

J. Elwood Andresen for Appellants.

Clarence DeLancey for Respondent.

BRAY, J.—In a quiet title action, defendants Antone L. Rodrigues and Lois Rodrigues appeal from a judgment in favor of plaintiff.

The question presented is the sufficiency of the evidence to support the court's finding of lack of delivery of a certain deed.

### EVIDENCE

Plaintiff and defendant Antone are brother and sister, and are two of the eight children of Mary E. Rodrigues, who acquired the realty from her husband on his death in 1928. Mary was born in the Azores, Portugal, had little schooling, but could read simple English. Living on the premises in 1945 were Mary, her two sons Albert and Antone, and the latter's wife. In November or December of that year Antone was heard to inform his mother that to avoid probate expense she ought to make a deed of the property to all eight children. Some, if not all, of the children had talked over with Mary the making of a deed to them. Many times she had stated that she wanted the children to have the property in the event of her death and wanted a deed to them so that upon her death the property would be divided among them without probate. It was understood that Antone was to make the arrangements for the deed. On July 12, 1946, Antone, Manuel and Mary, and possibly one or two of the other children, went to a notary public's office where the first three instructed the notary to draw a gift deed from Mary to the children. There was no testimony as to whether after signing the deed Mary handed it to Antone or anyone else. However, Antone recorded it three days later. Mary paid for its preparation. Thereafter Mary continued to collect rent from Antone, Albert and the other tenants in the house. The roof was repaired by Antone and Albert. Mary gave Antone the money for the materials and for his work. Albert made no charge. Mary paid the taxes and insurance on the property and had

complete control of it. After the controversy arose, Mary stated that she had wanted the deed to be effective only when she died, that as long as she lived the property was to be her home. In 1948 Antone wanted all the children to deed the property back to the mother. He had a deed prepared for that purpose, dated February 20, 1948. His purpose was to get the title into her name so that she could borrow on the property and loan him money to go into the trucking business. The other children refused to sign. Antone claims that in 1949 Clement asked to see this deed which Antone and Manuel apparently had signed, and then against Antone's wish took it away. It bears an acknowledgment by all eight children dated December 21, 1949. Antone denies acknowledging it. In June, 1948, Antone and his wife recorded a declaration of homestead on the property and in November, 1949, Antone executed and recorded a gift deed of his interest, if any, to his wife. August 18, 1950, Mary deeded the property to plaintiff.

There came a time when Antone would no longer pay rent. His mother wanted him either to pay or get out. At first he refused to do either. Eventually he left. He contends that the Board of Health forced him out because of his baby and the crowded conditions.

The court found that Antone influenced his mother to execute her deed without any valuable or other consideration; that she was under his influence; that she signed and acknowledged it for the purpose of avoiding probate proceedings and with the intention that it would not be presently operative but that the title to the property would remain in her and vest in the children after her death; that it was not her intention at any time to divest herself of the title nor to vest a present title in the grantees; that the deed was not delivered with the intent of divesting herself of present title.

### DELIVERY

Defendants contend that their possession of the deed raises a presumption of delivery which has not been overcome, and that manual delivery of a deed vests title in the grantee regardless of the intent with which the deed is delivered. While possession and recording of the deed has been held to raise a presumption of delivery (*Hill* v. *Donnelly,* 43 Cal.App.2d 47, 49 [110 P.2d 135])* and the burden of

---

*See *Estate of Galvin*, 114 Cal.App.2d 354 [250 P.2d 333], for discussion on the question of whether it raises a presumption or an inference.

proving nondelivery or conditional delivery is upon the plaintiff (*Kuenzel* v. *Grettenberg*, 88 Cal.App.2d 656 [199 P.2d 732]), "Whether a deed in fact has been delivered, in a legal sense, is dependent upon whether the grantor intended that the deed should be presently operative. This intent is a question of fact dependent upon all the circumstances surrounding the transaction." (*Hill* v. *Donnelly, supra,* 43 Cal. App.2d at p. 49.) In our case there was no evidence of manual delivery. Assumption of such delivery depends upon the presumption or inference following from defendants' possession. As against this presumption or inference there is evidence from which the court could reasonably infer that there was no delivery by Mary at all, or at least there was no delivery with intention that the deed should be presently operative. ▉ Defendants' testimony itself shows that Mary only intended the deed to be operative at her death. In *Counter* v. *Counter,* 104 Cal.App.2d 786 [232 P.2d 551], where a deed was delivered with intent that it not become effective until after the death of one of the grantors, we quoted from *Hefner* v. *Sealey,* 175 Cal. 18, 19 [164 P. 898] : " 'The delivery of a deed is not effected by a mere manual tradition of the instrument, unless the act "be accompanied with the intent that the deed shall become operative as such" [citation] i. e., that it shall presently pass title, without the reservation of any right of revocation or recall. [Citation.] Whether or not the requisite intent existed is a question of fact for the trial court or jury,' " and said: "Physical delivery raises an inference that the grantors are immediately parting with the title. But that inference may be overcome by evidence showing that such was not the intention of the grantors." The following language, also from the Counter case, is particularly applicable to the evidence in our case (p. 789) : "Here, while the circumstances were such as to support a conclusion, had the trial court made it, that the grantors intended to vest title reserving to themselves only a life estate, such a conclusion is not compelled. A very reasonable conclusion is the one drawn by the court, namely, that the grantors did not intend to part with the title but merely intended the deed as a testamentary disposition to take effect upon their death."

Defendants cite *Shaver* v. *Canfield,* 21 Cal.App.2d 734 [70 P.2d 507], a case in which the grantor's intention that the deeds were not to take effect was not disclosed at the time

of delivery, and *Security-First Nat. Bank* v. *Leatart*, 75 Cal. App.2d 211 [170 P.2d 687], where the court said that the evidence showed without conflict that the grantor intended that the deed become effective upon delivery. Obviously these cases are not in point. In the Leatart case the court stated the rule which is applicable here (p. 214) : "If in parting with possession of a conveyance the grantor intends thereby to divest himself of title, there is an effective delivery of the deed, and the solution of the question is grounded on the intention of the grantor, which is a question of fact to be determined by the trial court on all the evidence bearing thereon." In *Estate of Galvin, supra,* 114 Cal.App.2d 354, we discussed at considerable length the question of evidence against the presumption or inference arising from possession of a deed, and the fact that in determining the vital question of delivery the court is not bound to accept as true the testimony of the possessor. There is no testimony that Mary ever intended to or did deliver a deed which would be presently effective. All the evidence including defendants' own testimony, except the inference or presumption which defendants rely upon, refutes such an intention.

### FINDINGS IRRECONCILABLE?

There is nothing irreconcilable between the findings that neither at the time she signed and acknowledged the deed nor any other time did Mary intend to divest herself of present title nor to invest it in the grantees until her death, that her intention was that title would vest only upon her death, and the finding that the deed was not delivered with the intent of divesting herself of present title. The cases such as *Hill* v. *Donnelly, supra,* 43 Cal.App.2d 47, and *Webb* v. *Saunders,* 79 Cal.App.2d 863 [181 P.2d 43], upon which defendants rely for the claimed inconsistency, were cases involving a present intention to pass title, which intention is absent here. "A valid delivery of a deed depends upon whether the grantor intended that it should be presently operative . . ." (*Huth* v. *Katz,* 30 Cal.2d 605, 608 [184 P.2d 521].)

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.